## Fordson Coal Company v. Mills.

(Decided April 25, 1930.)

CLEON K. CALVERT, J. G. BRUCE, CLIFFORD B. LONGLEY and WALLACE R. MIDDLETON for appellant.

W. W. RAWLINGS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

This suit was begun May 22, 1920, to restrain Woodson Mills et al. from trespassing on a tract of land containing something over 100 acres claimed by the plaintiff, F. S. Peabody, trustee. The defendants answered and claimed the property belonged to the defendant Woodson Mills. Peabody died August 27, 1922, and on April 19, 1923, the parties stipulated that this action should be revived in the name of his widow, children, heirs at law, executors, and trustees, and that the Fordson Coal Company, which had purchased the property from the Peabodys, should be substituted as plaintiff. The case was then prepared, and when heard by the trial court, the petition was dismissed and Woodson Mills adjudged to be the owner of the property. The Fordson Coal Company appeals.

We think it best to give briefly some of the history of this property. This land was surveyed November 23, 1854, and on that survey a patent No. 34860 issued from

the commonwealth of Kentucky to Moses S. Gilbert, May 29, 1862. In a suit to settle Gilbert's estate this land was sold to Milam Smith on September 14, 1877. Later, it was sold under an execution against Smith and conveyed to Harrison Mills on November 30, 1883. Harrison Mills on October 20, 1890, conveyed this property to James S. Churchill and by mesne conveyances it has come to the Fordson Coal Company. It is claimed that it was afterwards learned this land was embraced in a patent issued by the commonwealth of Virginia to Benjamin Say on April 15, 1788, and in a proceeding had under section 4076, Ky. Stats., this Benjamin Say patent was sold and conveyed to George V. Turner on February 4, 1909.

It is stipulated that the Fordson Coal Company, has a regular chain of conveyances, all properly signed, acknowledged, and recorded, conveying to it such title as Harrison Mills had on October 20, 1890, and there is a like stipulation showing the descent to the Fordson Coal Company, of such title as George V. Turner obtained under the proceeding to forfeit the title of the heirs of Benjamin Say et al.

Woodson Mills makes these claims or defenses: (a) He claims by adverse possession and relies on section 2505, Kentucky Stats. (b) In the deed to George V. Turner there is this exclusion: "Excluding from said boundary seven thousand and two hundred (7,200) acres in the name of Boswell Goodwin; and an entry in the name of George Thompson of six thousand six hundred (6,600) acres, also an entry of four thousand (4,000) acres in the name of Abraham Buford, and also excluding therefrom the portion thereof, of which any person of those under whom he claims has had the actual adverse possession for five years next preceding said judgment of forfeiture, under claim or color of title derived from any source whatever, and who or those under whom he claims, shall have paid taxes thereupon for the five years in which such possession may have been held, and also excluding the mineral or other interests, or right in or pertaining to such land of which such person and those in privity with him, his heirs, representatives or assigns, have had such actual adverse possession for said period of five years and shall have paid taxes thereon for said period of five years in which such possession may have been had."

He relies on Davidson v. Lewis, 159 Ky. 798, 169 S. W. 538, in this connection, and says he was in adverse possession of this property when this deed to Turner was made.

He claims he was in actual adverse possession of this property when the deeds were made under which the Fordson Coal Company claims and he relies on section 210, Ky. Stats. (champerty). We shall now consider these in the order named. His defense (a) of adverse possession must fail, for an adverse possession to ripen into title must be for 15 years, exclusive, open, notorious, and unbroken, as we pointed out in Combs v. Ezell, 232 Ky. 602, 24 S. W. (2d) 301, 305, and we there said such possession could be broken, ''by an act of the real owner by the intrusion of a stranger, (or) by the abandonment of the premises by the occupant himself.''

Examining the claim of Mills in the light of this, we find his adverse possession has not been continuous, and that he had abandoned it. Among other things laid down as constituting abandonment, we find this in 2 C. J. p. 101, sec. 137: ''Interruption of the continuity necessary to acquire title by prescription occurs when the adverse claimant recognizes the title of the disseizee. On recognition of such title his adverse possession ceases to be adverse, no matter how hostile it may previously have been, and limitation does not again begin to run against the person whose title is acknowledged until the claimant repudiates his title.'' Also see section 37, p. 722, of 1 R. C. L.

That Mills did recognize the title of those under whom the Fordson Coal Company holds we know from the fact that he occupied this property under leases from them from January 1, 1895, to January 1, 1898, and again from January 1, 1899, to January 1, 1901. See Buckhorn Coal & Lumber Co. v. Woods, 228 Ky. 705, 15 S. W. (2d) 437. Mills continued on the property, and the presumption is this possession was not hostile but was had under section 2295, Ky. Stats., and would not become adverse until he repudiated his landlord's title and brought knowledge thereof home to him. Mills claims that Thomas A. Bird as agent of George V. Turner presented

him with a lease for this land and that he refused to sign it and that he then wrote this letter:

"Bright Shade, Ky., January 19, 1908.

"Mr. George V. Turner, New York, N. Y.

"Dear Sir: You will find enclosed a lease that Thomas A. Bird gave me for a piece of land bought of Harrison Mills, after investigating the titles I find that I am the owner of the land and so I cannot look after it for you. Your truly,

"Woodson Mills."

Many difficulties confront Mills at this point, none of which does he overcome.

It is shown that Bird was dead at the time Mills gave his deposition, hence he was not a competent witness regarding transactions with Bird. See Combs v. Roark, 221 Ky. 679, 299 S. W. 576, and Harpending v. Daniel, 80 Ky. 449. There is no evidence Turner got this letter, Mills merely says he mailed it to him. There is no evidence that Turner then lived in New York or that Mills had any reason to believe Turner would get this letter addressed as it was. This record shows Turner lived in New Jersey, and we are bound to hold this letter was not such a repudiation of Turner's title as the law requires. This court discussing this feature in Chambers v. Pleak, 36 Ky. (6 Dana) 426, 32 Am. Dec. 78, said: But to be availing, it should be manifested by some open, notorious, public act of disclaimer, and holidng over against the will, and in opposition to the title, of the landlord, or by some forcible act of explusion. If not manifested by some distinct and unequivocal act of this kind, his possession will be still deemed consistent with the possession of his landlord, or co-tenant."

Again, in the case of Holten et al. v. Jackson, 184 Ky. 559, 212 S. W. 587, 590, we said: "One who enters as a tenant under another is estopped to deny the title of the one under whom he enters until the expiration of the term of the tenancy, or the tenant vacates the premises and surrenders same to the landlord. The possession obtained by a tenant is presumed to be amicable, and in harmony with the title of the landlord, until the contrary is shown by clear and convincing evidence. The general rule is that a person, once a tenant, is presumed to remain such so long as he holds possession of the lands demised.

The duration of the estoppel is not limited to the expiration of the lease. 16 R. C. L. 653.''

And yet again, in Mullins v. Hall (Ky.) 112 S. W. 920, at page 922, it is said: ''It has been settled in numerous cases that a tenant, while in possession under a lease, will not be permitted, without renouncing the tenancy and restoring the premises to the landlord, to set up in himself title, however it may be acquired, in opposition to or that conflicts with the title of his landlord.''

This letter, if it amounts to anything, really shows this: That during the period from January 1, 1901, until January 19, 1908, the tenancy of defendant was under plaintiff's predecessors and continuous; that this tenancy was not renounced, if that was a renunciation, until within fifteen years before the institution of this action. Those admissions in this letter are fatal to the claim of Mills. Mills cannot succeed for, by the execution of the leases mentioned above, he broke the continuity of his possession, acknowledged the chain of title of the Fordson Coal Company, as superior to his own, accepted one of the remote grantors of the Fordson Coal Company, as his landlord, has never effectually repudiated the title of his landlord, and is hence now estopped to claim title against the Fordson Coal Company, which is holding under grant from Turner whom Mills acknowledged as his landlord by the execution of these leases, and hence his defense (a) is without merit.

His defense (b) is equally unmeritorious for the five years statute of limitation contained in section 4076g of the Kentucky Statutes only protects one who has had actual adverse possession of land for five years next preceding a judgment of forfeiture paying the taxes thereon during each of those years, under a claim or color of title. Ky. Stats., sec. 4076g. Davidson v. Lewis, 159 Ky. 798, 169 S. W. 538.

The terms of the statute are plain, and those entitled to its protection are clearly described, as those who have had actual, adverse possession of certain defined lands, under claim or color of title for the five years next preceding a judgment of forfeiture in a proceeding instituted under section 4076d, having paid the taxes due thereon during each of those years. He fails in all these particulars.

It is stipulated in this case that the land in controversy is embraced within the Benjamin Say grant of

1788; that on April 6, 1907, the proper official instituted a proceeding under Ky. Stats., sec. 4076d, to forfeit the title to that grant to Kentucky for non-payment of taxes, and that on May 14, 1908, the judgment of forfeiture was entered in that case. The defendant in order to shelter under the statute must show that he had actual, adverse possession of this land for five full years next preceding May 14, 1908, and that he paid taxes on the land during each of those years. This he has failed to do, since on January 19, 1908, he was in possession of this land as tenant of plaintiff's predecessors in title, and this was just three months and twenty-six days before the judgment of forfeiture was entered. Taking defendant's own testimony as competent it shows that he remained on this land from December 31, 1900, until January 19, 1908, under a tenancy evidenced by written leases, encouraging the belief that he was still tenant, and that for the first time on the latter date he made even an abortive squint at relieving himself of the relationship.

He is among the first class described by Judge Carroll in connection with section 4076g, supra, in Davidson v. Lewis, 159 Ky. 798, 169 S. W. 538, 540, thus: "If they do not come within the saving of this section, then, of course, they are not protected in their occupancy by it. If they do, they are."

We conclude, therefore, that defense (b) is without merit for Mills has not by proof in this record brought himself within the protection of section 4076g of the Ky. Statutes.

That leaves defense (c), which is the plea of champerty. In support of this defense Mills, in his deposition, says: "I was in actual adverse possession of this tract of land, and so claiming it, as I have stated above, at the time the plaintiff herein took the title for said tract of land, and accepted a deed therefor."

The possession necessary to avoid a deed under the champerty statute is, it must be said, at least as strong as that which under the limitation statute will ripen into title if long enough continued (Interstate Investment Co. v. Bailey, 93 S. W. 578, 29 Ky. Law Rep. 468; Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629), and, owing to the drastic nature of the champerty statute, every fact essential to the defense must be clearly and strictly proven. Lanham v. Huff, 228 Ky. 139, 14 S. W. (2d) 402. At most, the testimony offered by

appellee consists of his mental conclusions, from facts not revealed. He mentions no particular deed, fixes no particular time, and no particular act of dominion is shown. If he could not prove title by adverse possession in this way, as he cannot (Logan County v. Davenport, 214 Ky. 845, 284 S. W. 98), we fail to see how he can prove in this way adverse possession at a particular time. If he refers to the deed from his father to Churchill, his own evidence shows that he was not in possession in 1890, but was living on another tract of land a mile and a half away, when this deed was executed. If he refers to the deed from the unknown heirs of Benjamin Say made by Webb, commissioner, to George V. Turner, a sufficient answer is that the champerty statute does not apply to such a deed. Golden v. Blakeman, 223 Ky. 517, 3 S. W. (2d) 1095. If he has reference to the deed from Stuyvesant Peabody, trustee, and others to the Fordson Coal Company, the answer is that this suit was pending at the time that deed was executed, and it was therefore not within the sanction of the statute. Chiles v. Conley, 9 Dana, 385; Frasure v. Northern Coal & Coke Co., 189 Ky. 574, 225 S. W. 479; and Pond Creek Coal Co. v. Hatfield, 228 Ky. 806, 16 S. W. (2d) 442. If he has reference to the deed from the Kentucky River Timber & Coal Company to Francis S. Peabody, trustee, made April 18, 1918, the answer is contained in section 2295 of the Ky. Statutes, Mills being then by virtue of that statute in possession of this land under the lease made him on January 1, 1899. Thus we see defense (c) is without merit.

Before closing this opinion we will notice an attack on these leases made by Mills. He testifies he was induced to sign them by fraud practiced upon him and misrepresentations made to him by Thomas A. Bird, the agent of George V. Turner, but as Bird is dead, Mills is not a competent witness on this subject and as Mills is the only witness on that point, this position is untenable.

It is also alleged in the exceptions, to the deposition of Mills, that Turner was dead when it was given, and this Mills does not deny. Hence, the exceptions to the deposition of Mills must be sustained. His next attack on these leases is based on what he says is a failure of consideration, the monetary consideration mentioned being one dollar, but Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323, is a complete answer to that.

Hence it follows Mills has no meritorious defense, and the plaintiff is entitled to the relief sought, and the trial court is now directed to so adjudge.

Judgment reversed.