## Chapman et al. v. Hounshell.

(Decided March 1, 1935.)

GRANNIS BACH for appellants.

E. C. HYDEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

John Bach, a resident of Breathitt county, Ky., before his death owned a large tract of land situated therein through which ran Quicksand creek. After his death and in 1893 the land was divided between his children in a proceeding instituted for that purpose in the Breathitt county court, and deeds were made to his heirs by the commissioners the court appointed for that purpose. Three of the heirs were James A. Bach, Floyd Bach, and Mrs. Hounshell, the mother of defend-

ant and appellee herein. The course of the creek through the land of John Bach formed a figure resembling the shape of a horse collar, and the land contained in it was designated by the Bachs and referred to in this record as "Round Bottom," all of which was very fertile and considerably superior in quality to other portions of the tract, a large part of which was hill or mountain land.

In making the division of John Bach's estate among his heirs, the commissioners attempted to and did allot each of them a portion of Round Bottom, and also gave to each a portion of the hill land which in some instances was disconnected from their portions in Round Bottom; but the portion allotted to Mrs. Hounshell was in one contiguous body, and as we construe the calls in the deeds the Round Bottom part of the land allotted to James A. Bach, and which extended to the creek, was attempted to be connected by a small strip of Round Bottom with the portion allotted to him in that part of John Bach's hill land lying opposite to that allotted to Mrs. Hounshell, but principally on the other side of the creek. The question in this case is: Whether or not he was allotted any part of Round Bottom opposite his hill land in the division made by the commissioners?

The issue is presented in this way: The appellant and plaintiff below, Delpha Chapman, is a daughter of James A. Bach, the latter of whom died in 1929 leaving surviving several children and grandchildren. His land was likewise divided between his heirs, and Mrs. Chapman was given that portion of the hill land next to Quicksand creek and joining, on the northwest, the portion allotted to Mrs. Hounshell in the division of John Bach's estate, and all of which had been acquired by appellee and defendant below, Eddie Hounshell. Mrs. Chapman's husband, the appellant and defendant below Marion Chapman, or both of them jointly acquired by purchase the interest of the other heirs of James A. Bach in and to his part of John Bach's estate. Defendant, Eddie Hounshell, began cultivating a small strip of land about thirty feet wide at the north end of the tract allotted to his mother (and which he had acquired), and the Chapmans filed this equity action against him in the Breathitt circuit court seeking to enjoin such trespasses, upon the ground that they owned the

216

strip upon which the trespasses were committed. Defendant answered and denied plaintiffs' title thereto, and asserted title in himself, and upon submission, after considerable proof taken, the court dismissed plaintiffs' petition. Complaining of that judgment, they prosecute this appeal. It will at once be seen, and so conceded by the parties, that all of them claim title from a common source, i. e., from John Bach, and the issue is to be determined from a proper construction of the deeds of the commissioners in the division of his estate.

The relevant calls in the division deed made to James A. Bach in the division of his father's estate are: "Thence down the hill, S. 58 30 W. 69 Poles *crossing creek* to a beech; thence down said creek, S. 52 15 W. 17 5/10 poles stake upper corner end Round Bottom, S. 48 30′ E. 19 9/10 poles stake S. 36 E. 30 5/10 poles stake." (Our italics.) Those calls, with the others preceding and following them, embrace both the hill and Round Bottom portions of Jahn Bach's lands that were given in the division of his estate to James A. Bach, and it is plain to be seen that the first call in the insertion supra is the description of the line coming off the hill and approaching the creek, and which is described as "crossing the creek to a beech." The description of the lot that was allotted to Mrs. Hounshell or her heirs (it being the one now owned by defendant) contains a call saying, "N. 52 15-W. 37 poles to a beech," which it is proven, and not denied but admitted, is the same beech corner that is mentioned in the James A. Bach division deed to the line as "crossing the creek," and that beech or its stump is now there and about thirty feet from the present bank of the creek proper.

It is the strip of land on that side of the creek between the beech and the stream that is the subject-matter of this controversy, and it contains only about 1½ acres. In the deed of the commissioners to plaintiff Delpha Chapman (nee Bach), in the division of James A. Bach's estate, the relevant call is: "Thence *crossing* main Quicksand Creek to *beech stump* on Eddie Hounshell's line; thence down the creek with Eddie Hounshell's line to his corner" (our italics), and which beech stump it is conceded is the same beech tree or stump that is mentioned in the other deeds to which we have referred, and which were made in the division of John Bach's estate. So that, in the allotment of her

portion of John Bach's estate Mrs. Chapman was given the portion of her father's land bordering on the Hounshell tract; but she and her husband, either jointly or singly, later purchased the interest of the other heirs of James A. Bach and became the owners of her father's portion of John Bach's real estate. It is, therefore, most convincingly shown that all title papers introduced, as having any bearing upon the true location of the line between the Chapman tract and the Hounshell one, locates it so as to embrace the contested strip in the land belonging to plaintiffs.

But notwithstanding that established fact, it is sought to be met with two contentions, one of which is that, although the title papers of the parties so indicate, James A. Bach in his lifetime never claimed any land embraced in the contested strip on the side of the creek where it lies, but that he accepted the creek as the line separating his hill tract from the Hounshell one, and that he permitted, consented to, and acquiesced in certain acts of defendant which the latter claims were acts of ownership and which he asserts in his pleadings (but not in his proof) have continued for such a length of time as to mature title in him to the strip by adverse possession. However, that defense is not supported by the testimony, since it is clearly shown that the strip of land in controversy was outside of the fence inclosing the Hounshell tract up until some ten or twelve years before the filing of this action, and that immediately adjacent *to the stream* there was either a public or private road which eventually became impassable and it was moved to a higher point upon or just beyond the bank of the creek where it is now located, and the only cultivation of the still further narrowed strip lying between the present road and the water in the creek was first begun by Eddie Hounshell some ten, or possibly twelve, years before the filing of this action. It is, therefore, plain that no title by adverse possession has ripened in him, and that this contention is not available in avoidance of the recitations and descriptions in the deeds supra.

The other contention made in avoidance of the description contained in the relevant deeds is that the defendant at the time plaintiffs obtained their interest in the James A. Bach tract of land was in adverse possession of the contested strip of land, and that the

acquisition of it by plaintiffs was champertous under section 210 of our present Kentucky Statutes, and that the attempted conveyance to them of any portion of such adversely held strip was and is void. But we are not prepared to accept that argument, even if it should be conceded that at the time of their acquisitions of title to their land the defendant was in actual adverse possession of the strip as he contends he was; but which, to say the least of it, is extremely doubtful. We have uniformly held that the champerty statute does not apply to decretal deeds. See Preston v. Breckinridge, 86 Ky. 619, 6 S. W. 641, 10 Ky. Law Rep. 2; Arnold v. Stevens, 17 S. W. 859, 13 Ky. Law Rep. 622; Carlisle v. Cassidy, 46 S. W. 490, 20 Ky. Law Rep. 562; Fordson Coal Co. v. Mills, 234 Ky. 64, 65, 27 S. W. (2d) 382; and others cited in those opinions.

Mrs. Chapman obtained title to the contested strip under the commissioners' deed conveying to her the portion of her father's estate that was allotted to her in county court proceedings for that purpose. It was not a conveyance inter partes to which alone the champerty statute applies and which are alone embraced by it, and for which reason defendant's second contention cannot be sustained; nor is it aided by the fact that later plaintiffs purchased the interest of other heirs in the landed estate of James A. Bach (and which was done through inter partes contracts to which the statute would apply), since none of the interests so purchased embraced any portion of the contested strip; it lying exclusively within the boundary of the division deed executed to Mrs. Chapman by the commissioners in proceedings to divide the landed estate of James A. Bach, and to which character of deed the statute, as we have seen, does not apply.

The conclusions expressed eliminate the necessity of rehearsing the testimony of the witnesses who appeared in the case, except to say that it was sought to be and was proved by some of them that it was the intention and purpose of the commissioners who divided John Bach's estate to make the creek the line between the hill land allotted to James A. Bach and the portion allotted to the heirs of Mrs. Hounshell. But such testimony was and is in plain contradiction of the deeds executed by the commissioners appointed by the court, and it is conceded that they were executed in

conformity with the report of the commissioners, but which latter has become lost or misplaced and was not introduced upon the trial. A small number of witnesses attempted to say that the pivotal beech corner was referred to in the division deeds of John Bach's estate as only "a pointer" and not as a corner but which is also in plain contradiction of the deeds themselves, and there is no allegation of mistake, or effort to correct any of the deeds in that or any other respect.

But, aside from such considerations, there were a number of witnesses, as well as a number of circumstances, clearly establishing the fact that there was allotted to James A. Bach the strip of land in controversy lying on the same side of the creek as does the Hounshell tract adjoining it. Those witnesses and circumstances confirm the fact that the beech tree (or the beech stump) was, and has been since the division of John Bach's estate, a corner. Furthermore, it is admitted by defendant himself that there once were stones marking the calls from the beech corner as set out in the division deeds, and which designated the line separating the land of plaintiff from that owned by defendant. Those marking stones, however, have been removed and are no longer at the places where they were originally placed; but the fact that they were once so placed is most convincing proof that plaintiff's contention in the litigation is the correct one.

We are, therefore, constrained to hold that the court erred in dismissing plaintiffs' petition; and the judgment is reversed, with directions to set it aside and to render one in conformity with this opinion.