## Burgess et al. v. Marshall et ux.

March 28, 1947.

As extended on denial of rehearing October 14, 1947.

W. B. Ardery, Judge.

Fred Lisanby for appellants.

J. C. McKnight for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This action arose out of a dispute between the appellants, Richard L. and Joe S. Burgess, and the appellee, E. B. Marshall over a division line.

The farm of the appellants lies generally on the north side of Eagle Creek in Scott County, Kentucky, while the farm of the appellee lies on the south side. The appellants received their farm by inheritance from their mother and by deed from their two sisters in 1943. The deed to the mother, Mrs. Sallie P. Paxton, called for the center of the creek. The deed of the two sisters to their brothers called also for the center of the creek. But appellants contend that they and their predecessors in title have exercised exclusive, open, and continuous use of the whole creek and that portion of land on the south

side of the creek to an old fence on the south side thereof, and insist that the old fence, or fence line, is the division line. They claim to that fence line by adverse possession. They insist that appellee's predecessor in title, and the appellants and their predecessors in title, have recognized the fence on the south side (appellee's side of the creek) as a division line between the two farms since 1893.

The record shows that the instant action was brought by appellants when appellee, after he had purchased the farm, tore out about 2/5 of the alleged division fence on his side of the creek. He then locked a gate in the fence on appellants' side of the creek and undertook to take possession of the land between the fence on the south side (appellee's side of the creek) and the fence on the north side (appellants' side of the creek).

By amended answer and cross petition appellee set up title by adverse possession to the parcel of land claimed by appellants in their petition, and alleged that the center of the creek throughout the entire distance was the division line between the farms, and that appellants and appellee, and their predecessors in title mutually understood that the center of the creek was the dividing line, and that by their conduct and statements, pursuant to such mutual understanding, they estopped themselves one against the other from claiming any other division line than the center of the creek.

Proof was taken and the cause submitted. The court below, after writing a well considered opinion, entered judgment adjudging that the appellants, plaintiffs below, did not acquire title by adverse possession to any part of the tract of land described in their petition, and further adjudged that the division line between the lands of the parties, where both border on Eagle Creek, is the center or middle of Eagle Creek, and that each farm is entitled to equal enjoyment and use of the water which flows through Eagle Creek between their farms.

Appellants, in prosecuting this appeal, insist first that the lower court erred in adjudging that appellants failed to establish title by adverse possession to that 2/5 portion of the creek above the water gap. Conven-

tionalized reference is made to cases cited in appellants' brief as to what constitutes adverse possession, the character of same and the law relative to the acquirement of title by adverse possession. All of these are in point, but the question is: Did the proof as taken meet the test of the requirements of obtaining title by adverse possession?

Appellee's deed also called for the center of the creek although the title of his predecessors in title called for the creek.

For a more accurate picture, Eagle Creek runs generally East and West. Starting, then, from the West boundary of appellee's farm, a fence is maintained on the south side of Eagle Creek about 3/5 of the length of the creek as it passes between the litigants' farms. At that point there is a water gap in the creek. On the remaining 2/5, concerning which the litigation was originally brought, is to be found an old fence, or fence line, on the south side leading to the boundary to the East of appellee's farm, and on the north side throughout the same distance over this 2/5 portion is found a fence on the appellants' side of the creek with a road or passway lying on the south side of the appellants' fence and between the creek and appellants' fence. The testimony is that on the south side the old fence line, or old fence, varied, as to its proximity to the creek, from a few feet from the edge of the creek, or possibly at the edge of the creek, to as much as 30 or 40 yards from the creek.

There is evidence that some portions of the land between the old fence and the creek had been cultivated by appellee and his predecessor in title, and that there had been some timber cut off of that portion. About the strongest evidence introduced by appellants concerning their use of the land was that some one had seen their stock on an occasion or two in the disputed area. Nowhere is there strong, convincing evidence of open, notorious, and adverse possession, or an exercise of dominion over the disputed territory. The most that could be said is that what evidence was introduced on either side was more or less weak and none of a convincing character.

The further contention that the appellees' deed is champertous and void has been presented. This ques-

tion had not been raised heretofore and was not relied upon originally. However that does not preclude its application or consideration now as champerty may be relied upon if the facts justify it even though it was not pleaded. Dotson v. Pinson, 242 Ky. 640, 47 S. W. 2d 58. We need only call attention that the adverse possession necessary to render a deed champertous must be accompanied by all the elements necessary to ripen into title. In Fordson Coal Co. v. Mills, 234 Ky. 64, 27 S. W. 2d 382, 385, we said: ''The possession necessary to avoid a deed under the champerty statute is, it must be said, at least as strong as that which under the limitation statute will ripen into title if long enough continued, * * * and, owing to the drastic nature of the champerty statute, every fact essential to the defense must be clearly and strictly proven. * * *'' See Deupree v. Walker, 255 Ky. 30, 72 S. W. 2d 732. The lower court found, and this court affirmed the finding, that appellants did not meet the test and requirements of obtaining title by adverse possession. It follows then that this contention of appellants cannot now be sustained.

The court recognized the justice and equity of the situation. It is common knowledge that there are many like and similar situations to the above, wherein adjoining property holders agree that each may have the use of water from a creek that divides their property. The adjoining property owners have done just as in this case—erected a fence on one side of the creek on the property of one for about ½ the distance and then crossed the creek and continued the fence on the property of the other for the remainder of the distance, thus making it possible for each property holder to enjoy the benefits of the creek.

We can think of no fairer or more equitable disposition of the matter than the court made. Under the facts and circumstances in this case, the judgment of the court below seems to be inherently and inevitably right. Even though we were not of this opinion, we would yet be entirely justified in adopting the well known rule of this court in following the chancellor. See Conley et al., v. Caudill et al., 301 Ky. 735, 193 S. W. 2d 147.

Wherefore, the judgment is affirmed.